Please be seated. Good morning. Welcome to the Fourth Circuit. Our first case is Northrop Grumman Systems v. Department of Labor. Mr. Ogden, we'll be glad to hear from you. Mr. Honor, thank you. May it please the Court, I am David Ogden, and I represent Northrop Grumman Systems Corporation in this appeal. I've reserved three minutes of my time for rebuttal. This case arises from a reduction in force that Northrop Grumman undertook in 2011 because of a need to cut costs in one operating unit. Fifteen employees were laid off, including the complainant, Ms. Sagan. In her subunit of seven employees, she was one of four employees who were laid off. Three were retained, so less than half. As we've explained in our briefs, the agency decisions holding Northrop Grumman liable under Section 1514A of Sarbanes-Oxley are rife with legal errors and many demonstrable errors of fact. But the heart of the case is the ARB's holding that Ms. Sagan engaged in SOX-protected activity. DOL defends only one theory of protected activity on this appeal, and that is the proposition that it was objectively reasonable for Ms. Sagan to believe that Northrop Grumman was trying to trick her into agreeing to arbitrate SOX whistleblower claims by requiring her to execute a standard conflict of interest form and to agree to abide by a corporate ethics policy that applied to everyone. Department of Labor does not contend that Northrop Grumman's ethics forms or its ethic policies actually did incorporate its arbitration policy, nor does the Department of Labor contend that the arbitration policy actually did require arbitration of SOX whistleblower claims. The ALJ made a finding that it did, didn't it? Yes, Your Honor, and that finding was clearly erroneous, as I can address, when you look at the specific language of the policies. And there's actually a clearly erroneous statement in the ALJ opinion, which is echoed in the ARB opinion. But your view is that DOL is no longer asserting that to be correct? I don't think they are, and I don't think they could be, Your Honor. Well, we'll find out. Yeah, and we'll take a look at the policies if we can this morning. DOL's really their only contention is that a person with her education and training could reasonably have believed that the policies did so provide. And I want to use my time today to focus on why that's clearly wrong for two independent reasons. There's a lot of spaghetti that's been thrown at this wall. I think if we pull on these two strands, it all falls off, basically. Before you get into your two reasons, Mr. Argon, let me just ask you, could an employee's objection to a company's arbitration policy ever form the basis of a SOX whistleblower complaint, in your view? We don't think so, Your Honor, for the reasons we've explained, that we don't think Section 1514A-E is appropriately considered within Section 1514A-A-1, which lists six categories. Can we explain in our briefs why we think? What I'm getting at is you're not trying to distinguish this case from what you might conceive could be other meritorious cases. You're just saying, absolutely, this kind of case could not, an objection to an arbitration policy, could not ever fit. We say both things, Your Honor. It couldn't fit. But the important thing, and the thing I really want to focus on this morning, is that this case is under no circumstances, could anybody reasonably believe, that this policy violates 1514A-E. And that's really the key thing. We kind of got off on a wild goose hunt on this case, where the first brick in the wall is missing. And that's the proposition, that this policy violates 1514A-E. And I think once you recognize that it can't possibly, then all the rest of it becomes irrelevant. What about the timing? I think from the papers I understand the absence of language about arbitration and the conflict of interest form and the standard business form. I understand that argument. But one of the positions raised is the conflict of interest form was not required to be signed during the pendency of the lawsuit when the arbitration was one of the issues. Why isn't that something that provides a reasonable basis for the belief that it was in retaliation for protected activity? Well, the first issue, and the one I really think resolves this case quite easily, is that there was no protected activity in the first place. And the refusal to sign the forms wasn't protected because, for a number of reasons, the one you mentioned, but more foundationally because the policy clearly didn't violate SOX. If the policy didn't violate SOX, then none of this and all of these inquiries matters at all because there's no violation of 1514A-E. The only basis that the Labor Department asserts here, Your Honor, for a violation of SOX at all is the idea that this policy could reasonably be thought to violate 1514A-E. And on its face, it doesn't apply. We're prohibited by law. There's just no rational basis for this entire inquiry. So we start piling all these sticks on top of that empty foundation. There's just no case. In direct answer to your question, Your Honor, there was nothing sudden about all this. Ms. Sagan had been refusing to comply with this basic, simple ethics policy for years. Once the Virginia Supreme Court, once the Virginia Court of Appeals and the Supreme Court had, sorry, the Supreme Court, had resolved her appeal in this defamation lawsuit that was filed in 07, Northrop Grumman said, Look, obviously now your far-fetched thoughts about these ethics policies are irrelevant to your objections to arbitration because it's been held conclusively that you're bound by virtue of your employment to the arbitration policy. So just sign these forms. And at the time they said that, they said it has nothing to do with arbitration. She refused, not for a minute, but for nine months. She walked out of a meeting in which Northrop Grumman tried to sit down with her and explain, Look, just sign the conflict of interest form. Let's go through the questions. Do you have a problem? She wouldn't talk to them. She walked out. And at that point, they said, Okay, we'll give you a month. We'll give you 10 days to do this. Sign it. If you don't, you'll be suspended. Then you'll have another 30 days. If you don't, you'll be dismissed. Finally, through that process, she signed the form. And ultimately, she was riffed for other reasons. They could have dismissed her for refusing to sign that form. Your Honor, it wasn't protected. Activity is an ethics policy. Sox would want companies to have their employees sign ethics policies. But instead of that, they indulged her for years. Labor seems to take a contrary view to that. I'm sorry, Your Honor. So the Department of Labor seems to take a contrary view to that, at least in this case. They think the conflict of interest policy creates some sort of a securities fraud situation, which seems a bit odd to me. But apparently, that's the Department of Labor's position. Well, the Department of Labor has to have a reasonable basis for that position, Your Honor. If it's not objectively reasonable to take that view, then it can't form the basis of a Sox complaint. And here, it's not objectively reasonable for a couple reasons. I mean, they actually don't think it's linked to securities fraud. They think it's linked to a violation of the Sox whistleblower arbitration provision, which, of course, has nothing to do really with it. Your argument, I take it, would be that even if it were, that it still has to circle back to one of the six enumerated rationales in 1514AA1 in order to be cognizable. Correct, and it doesn't. But even more foundationally, as I said to Judge Keenan a minute ago, even if that arbitration policy somehow does come within one of those six pockets, and it doesn't, but even if it did, this policy can't reasonably be thought to violate it. And it's just all you have to know to know this is not objectively reasonable is two things. One, a simple legal point, and two, a simple undisputed factual point. And let me just go to those two things. If you understand these two things, you can't reasonably believe, with a college education and all that Ms. Sagan had, can't reasonably believe this is a violation. The first thing is that 1514AE prohibits the application of pre-dispute arbitration clauses to SOX whistleblower claims. That's a given. Nobody is disputing that. In fact, it's the foundation of Ms. Sagan's claim is that an arbitration policy that applies to SOX whistleblower claims is prohibited by law. She contends this policy did that. That's what DOL says this whole case is rested on. They said she could reasonably believe that. If you contend that an arbitration policy violates SOX, you have to believe that it is prohibited by law for a policy to apply to SOX whistleblower claims. Clearly, she knows that. Second, for a reasonable person to believe that an arbitration policy violates SOX, she has to read the policy to see if it applies to SOX arbitration claims. This one didn't. And, you know, it clearly doesn't. If you look at 1535 of the joint appendix, the policy on the second page. You're talking about what policy? This is the arbitration policy. At 1534, the policy begins. At 1535, the second page, it addresses claims covered. You have to look at what claims are covered to decide whether it applies to SOX whistleblower claims. And right there in the fourth paragraph, it says, the program does not apply to or cover claims as to which an agreement to arbitrate such claim is prohibited by law. All a reasonable person has to know is, first, applying it to SOX whistleblower claims is prohibited by law. That's a legal point that you have to understand. Clearly, she does. Second, you have to look at this one sentence, really, when you look at the policy, what you have to do to understand that it doesn't. It is certainly not reasonable, not objectively reasonable, to take the position that a policy violates a statute when the policy says it does not apply when it would violate a statute. If it's reasonable to think that, Your Honor, nothing's unreasonable. And the critical threshold factor that separates every employment dispute from a SOX whistleblower dispute is gone, because you can believe anything is a SOX violation and bring a claim and it's protected and you get back pay and front pay and everything else. All you've got to know is, one, it's prohibited by law to apply, and two, that the policy doesn't apply where it's prohibited by law. So is your view of how 1514A works is that the A1 listing of activities that create a whistleblower violation, that Congress having set those out specifically, we, under canons of construction, would read those to exclude any other grounds? Yes, sir, and that's clear. The case law is clear that if you include those six, all others are excluded. So do you see E, the anti-arbitration provision, then effectively is, for lack of a better word, some sort of an affirmative defense that could be asserted if the employer sought to require arbitration in a prohibited circumstance? It certainly could be. I mean, you could certainly take the position that it's prohibited by law here, so your effort to arbitrate should be rejected. But Northrop Grumman has never sought to have anybody arbitrate a SOX whistleblower claim, nor would it. Right. I was just more trying to get at how the statute, the pieces of the statute function. So my thought about that is the following, although I really think the point I'm making is independent of this. It's sort of prior to it. But in order for 1514AE to be a protected whistleblower claim, it has to be within one of the six buckets. Neither the ALJ or the ARB said what bucket it was in. They just said somehow it's a SOX whistleblower claim. That's a problem. That's actually a reversible error in and of itself. We don't think it comes within any of them. I think DOL says it comes within the sixth, shareholder fraud. We cite cases that say, no, to be within that bucket, you've got to have something to do with fraud. Well, there's nothing to do with fraud in an arbitration, arbitrability claim. So we just think it's not in there. But the thing I really think is important is for this court to reject the ARB's conclusion that a policy like this could conceivably be thought to violate 15AE anyway, even if it were one of the predicate claims, because it doesn't. And nobody who understands that 1514AE prohibits application of the policy to SOX whistleblower claims and understands that this policy doesn't apply, we're prohibited by law, ipso facto can't escape the conclusion that there's no violation. And it's important that you hold that and that you strike that down, because otherwise every company that has a reasonable, lawful arbitration policy like this is at risk of having to pay damages whenever somebody thinks irrationally the policy does or refuses to take some reasonable action on that basis. If you prevail on your A1 argument, do we necessarily get to saying anything about E? You can resolve it either way, Your Honor. You could rule our way and say, well, look, this whole case hinges on 1514AE being within 1514A1, and it doesn't, and that's the end of it, because their whole case is 1514AE. Or you could say, even if it were in there, this policy obviously doesn't violate 1514AE. And for more beyond that, you can make the point that Judge Quattlebaum made earlier on that these simple ethics policies don't say anything about arbitration. The ALJ and the ARB recite completely wrongly that the conflict of interest form, form C196, references and incorporates the arbitration policy. Well, if you look at form C196, which is at pages 7 to 8 of our blue brief, there's no reference, there's no incorporation of policy H103A, which is the arbitration policy. It's actually not referenced at all. That's just factually false. And the one policy that is referenced, the standard business conduct policy, the basic ethics policy of the company, says nothing about arbitration or H103A either. So it was irrational for her, Ms. Sagan, to believe there was a link, irrational for her to refuse to comply with these simple ethics policies for years and for months. And the company told her. This company was very patient. It told her it doesn't have anything to do with it. Just please sign it. She refused. If you look at the language of C196, nothing about arbitration. You look at the language of A210, which is the standard business conduct, nothing about arbitration. The word procedures is used, ethics procedures. Look at the ethics procedures, the standard ethics form says. Look at the ethics procedures. And Ms. Sagan thought that because it used the word procedures, that that was somehow invoking and requiring her to comply with arbitration procedures. Well, that's just completely irrational, particularly when the company told her that. So, one, these forms, no rational person, no reasonable person, would believe these forms incorporated any arbitration policy. But even if they did, the arbitration policy, no reasonable person could think the arbitration policy violated 15AE. And no good lawyer would conclude that 15AE was incorporated within 15A1. So it fails at the first step. It fails at the second step. It fails at the third step. Unless there are further questions, I'll reserve the balance of my time. Thank you. Thank you. You've got some rebuttal time. Ms. Marcus. Good morning, Your Honors. May it please the Court. I'm Sarah Marcus. I represent the Department of Labor. Your Honors, the agency decisions in this case merit affirmance under the limited review to be applied by this Court. And I will start with the legal question about whether the ALJ's opinion and the Board's affirmance of it, finding that the segment engaged in protected activity could possibly be correct. And we strenuously disagree with Mr. Grumman's assertion that A1 doesn't include the whistleblower protection provision itself. The whistleblower protection provision is very plainly a provision of federal law relating to fraud against shareholders. So what exactly is the fraud against shareholders here? Your Honor, the whistleblower protection provision has the purpose of promoting reporting of shareholder fraud. That's all that it relates to.  that Congress wrote. And so the complaint doesn't have to be about fraud. It can be about a violation of the whistleblower provision itself. If you didn't make that finding, then an employee... So which part of A1 are you making your argument under? The sixth part, any provision of federal law relating to fraud against shareholders. All right. So help us out here. Tell us exactly what act is the shareholder fraud. Your Honor, the whistleblower protection provision relates generally to reporting of shareholder fraud. So it is a provision of law that relates to shareholder fraud. So what is it? What are you saying in this case is the shareholder fraud that's reported? It isn't that shareholder fraud occurred. It is that there's an allegation of a violation of the whistleblower provision itself. So if someone has a company policy that says you have to wear a tie to work and someone complains that's a shareholder fraud, are you saying that's protected? No, Your Honor. Because they use the word shareholder. They just use the word shareholder fraud. Doesn't there have to be something that actually relates to shareholder fraud if that's the issue? There has to be something that relates to shareholder fraud or the whistleblower protection provision that protects whistleblowers who are attempting to report fraud. So tell us what it is. It's the third time I've asked you this question. Tell us what the Shareholder Fraud Act is in this case. The allegation isn't in these facts that Northrop Grumman committed shareholder fraud. The allegation is that Northrop Grumman created a policy that could violate the whistleblower protection provision that protects complaints about shareholder fraud. And that policy is? Mandatory arbitration provision. So it might be easier to understand maybe the more typical context in which this comes up. So if an employee complained that other employees had been fired because they were reporting shareholder fraud, that complaint itself wouldn't be about shareholder fraud. It would be about violations of the whistleblower protection provision because other employees were fired for complaining about fraud, and that would dissuade all of the employees in the company from making such reports. So if a company has an anti-arbitration provision generally that applies to acts of employment, that's a violation of SOX? Your Honor, an arbitration policy that applied to claims of violations of the whistleblower protection provision would violate 1514AE, which prohibits pre-dispute arbitration agreements applying to SOX whistleblower claims. Right, which if an employer attempted to arbitrate one of those claims, there would be a defense, statutory defense, that the complainant does not have to arbitrate. Correct. Okay. I'm still not connecting the dots on how you get from there to some sort of shareholder fraud. Your Honor, the prohibition on pre-dispute arbitration agreements are forcing employees to arbitrate their SOX whistleblower claims as part of Congress' scheme to promote reporting of shareholder fraud. It seems to me like you're putting the cart before the horse. You're saying because there is an arbitration agreement, a mandatory arbitration provision, that in case in the future there's some shareholder fraud related to any protected activity, then I wouldn't be able to take it to court and seek remedy. But I don't see any connection here to shareholder fraud. It seems to me that this whole thing is premised on the fact that her objection is to arbitration independent of anything to do with fraud. And what you have here is kind of latching on to the word arbitration in the act here without anything to do with fraud whatsoever in this case. Your Honor, as a legal matter, this is the scheme that Congress created to encourage reporting of shareholder fraud. And if it's not functioning and it doesn't operate, then employees might never come forward with their complaints. And the point of the provision is to ensure that they feel comfortable coming forward. So getting back to Judge Agee's point then, are you saying that any mandatory arbitration provision is a violation of this SOX whistleblower protection provision? I mean, that would be pretty sweeping, but it seems to me that's almost what you have to be saying in this case. We are simply saying that a complaint about a requirement to arbitrate claims under the SOX whistleblower protection provision constitutes a complaint about a violation of that provision and that that can be protected activity. But that's not what we really have here, is it? I mean, we have a complaint that the requirement of an arbitration clause violates SOX. That's what this case arose from. It seems like you're arguing something different than what we're dealing with in this case. Your Honor, I'm not sure I follow. I certainly don't mean to be. Ms. Seguin might not have fully understood how to correctly explain the legal implications and the legal intricacies of how her complaint constituted protected activity. But what we are saying is that because her complaint was that she was objecting to mandatory arbitration and that if mandatory arbitration applied to claims under the SOX whistleblower protection provision, that would be a violation of federal law relating to fraud against shareholders, that that can constitute protected activity. But the whistleblower protection provision itself has to be included in the broad phrase any provision of law related to fraud against holders. That's all it's about, is promoting complaints about fraud. So, I'm still just lost as to how having an arbitration provision creates fraud in some way. It doesn't create fraud, Your Honor. It could dissuade employees. Then how is it covered by the Act? I mean, Congress set out six specific rationales. Their choice, this isn't a common law matter, it's a statutory creation of Congress. They set out six specific rationales that bring an action within this statute. That's all, six of them, all right? You don't get to add any more. Congress can add 100 if it wants to. But you've got to find one of these six, and I think only this catch-all relating to fraud against shareholders is the only one you've got. And we keep plowing and replowing this ground as to how you get from arbitration provision to fraud. Your Honor, the catch-all is extremely broad. It says any provision of law relating to fraud against shareholders, and the whistleblower protection provision... So, what's the fraud? It's not fraud that has necessarily already occurred, or it might be. It's fraud we wouldn't know about because employees don't feel free to report their claims of fraud because they're dissuaded by their company not following the protections that are provided by the whistleblower protection provision. If employees are scared that... And that's because they have to sign a conflict of interest form? Your Honor, the facts of this case aren't as direct as some other examples that would be implicated if you found that as a legal matter there was no way that the whistleblower protection... a complaint about a violation of the whistleblower protection provision could be protected activity. In this instance, we're asking simply whether there was substantial evidence to support the ALJ's finding that Ms. Seguin reasonably believed that she was asserting a complaint that fell under the protections of SOX. Well, the ALJ, if I may have misread this wrong or misremembered it, I thought the ALJ made a specific finding that this conflict of interest form included arbitration. I've read it. I don't see it. Maybe you can find a spot in there I missed. Your Honor, I think it doesn't matter whether the ALJ thought that this did or didn't directly implicate the arbitration provision. The question is whether Ms. Seguin reasonably believed that it did. There's no question that she subjectively believed that by refusing to sign the form she was objecting to the arbitration provision. The question is whether it was objectively reasonable for her to believe that. What is the language in the form that you're relying on to support her reasonable belief that it was related to arbitration? Your Honor, we're not relying on language. We're relying on the factual circumstances of the whistleblower.  She doesn't have legal training. Right, but she was reading the form and then became concerned. And so I was hoping that maybe you could give us the language in the form that you see is troublesome that would support the reasonable belief. Your Honor, again, it's not about what I see or respectfully what the court sees. Ms. Seguin thought that the broad- Still, there has to be an objectively reasonable belief. Absolutely. Ms. Seguin thought that the broad reference to procedures in this and this business conduct form that it does refer to incorporated all of the company's procedures and that signing it would constitute agreement to the mandatory arbitration agreement. Isn't that argument essentially collapsing the objective reasonable standard with a subjective reasonable standard? It seems like you're saying because she believed it, it's objectively reasonable. What's the difference in the subjective belief and the objective belief under your argument? Your Honor, I apologize if I'm conflating them. I understand that they are two separate requirements. I meant to say only there's no dispute that she certainly believed it, and that's the language that she was looking at. The ALJ's findings with regard to objective reasonableness were that he properly looked at the factual circumstances of the whistleblower and found that Ms. Seguin doesn't have the legal expertise to understand all of the implications of the forms that she's asked to sign. For us, it might be clear, of course, you look to the language and you read thoroughly and you find the provisions that matter, but that's something we are all trained to do and she isn't. So what's the reason? Go ahead. He also pointed to the fact that you noted, Judge Quattlebaum, that Northrop Grumman tied permission not to sign the form to the pendency of her litigation regarding arbitration, and so it seemed that they were reinforcing her belief. And information that a whistleblower receives from her superiors and others with more expertise is just the sort of fact that this Court has relied on in previous cases in assessing reasonable objectiveness determinations, for example, in the Deltek v. Department of Labor case. The ALJ was looking at the kinds of factors that it's appropriate to look at. And again, I respectfully remind Your Honors that the question isn't, if you looked at this evidence, what outcome would you reach, but rather could any rational fact finder reach the finding that the ALJ did, and there is evidence in the record to support his conclusion. We also are asserting, of course, that the ALJ's finding that Ms. Seguin's protected activity contributed to her firing is supported by substantial evidence. The protected activity and the termination were temporarily proximate. The discipline reflected a change in her employer's attitude, and the ALJ found that Northrop Grumman's explanation for her termination was pretextual. So the ALJ seemed to take the tack. Maybe I misread this, that Northrop Grumman decided to fire about 15 people just so they could get at her. Your Honor, I don't think that's the best reading of what the ALJ found. There was a RIF that would apply to Ms. Seguin's unit, which was seven people. But you would agree, if that's what the objective evidence showed, that would be a fairly bizarre argument. Yes, but I don't think that that's what the ALJ's reasoning was. Ms. Scherzer designed a RIF that applied to seven people, and she had discretion to include – well, according to Northrop Grumman's policy, there was a list of factors that she was supposed to include. She didn't include years of service, which was one of the factors on the list that heavily favored Ms. Seguin. She heavily weighted conduct, which was a factor that disfavored Ms. Seguin, and she got to decide how the RIF would be designed, and the way that she designed it disfavored Ms. Seguin. And the ALJ did not find her to be a credible witness, and he did not credit her explanation that the RIF was neutral, and it just so happened that it included Ms. Seguin as one of the employees to be terminated. Do you agree that the administrative law judge applied the wrong standard concerning the defense that Northrop asserts when it says that – when the judge said they had to prove that the layoffs or the reduction of force was necessary? Do you agree that was an error in law? We don't agree that that's the best reading of the ALJ's opinion. It does mention business necessity, but the outcome that the ALJ reached hinges on the correct question, whether Northrop Grumman had shown, by clear and convincing evidence, that it would have fired Ms. Seguin in the absence of her protected activity. Do you agree that's the standard, and if there was any imposition of a business necessity or proving that, that would be an error of law? Relying on business necessity tests is incorrect, but the ALJ's opinion doesn't have to be a model of clarity. It doesn't have to never mention anything that wouldn't be the right thing to rely on. It simply has to bear the right relationship to find the facts that allow the application of the correct legal test, and ultimately that is what the ALJ did, and it is what the ARB affirmed, and that is why we're defending that substantial evidence supports the ALJ's finding that Northrop Grumman didn't show, by clear and convincing evidence, that it would have fired Ms. Seguin anyway, because its evidence relied heavily on Ms. Schertzer's testimony, and the ALJ found Ms. Schertzer not to be a credible witness and credibility determination. Let me go back to your initial argument concerning the Department of Labor's view of 1514A. Is that something that the ALJ even articulated? It seems to me you're articulating a standard that the Administrative Law Judge didn't interpret that way, and if so, is it proper for us to consider an argument that the ALJ didn't advance or didn't utilize? Your Honor, the ALJ does cite 1514AE several times in the opinion, and does refer to the change in the law under Dodd-Frank. His decision does not have to be perfectly clear, particularly on a legal issue, for us to defend the correct legal outcome. I think that this legal conclusion that complaints about violations of a whistleblower protection provision itself are a protected activity is the unanimous outcome under all of the whistleblower statutes that DOL enforces. All those other statutes, we looked at them. There are statutes that do that. They say that a whistleblower complaint is covered. Here we have six items that don't include the actual whistleblower action themselves. I think I'm right about that. I think that there are other statutes that have these catch-all provisions and that the whistleblower protection provision has been swept up under those. I think that's correct for Air 21. Air 21, the air safety protection provision. I apologize that I don't have them on. They're cited in our brief. Northrop Grumman notes that those say in this chapter, but it's a distinction that I would say is not persuasive. The air safety law is contained in one place in the United States Code. Fraud law is scattered throughout, and you wouldn't say in this chapter. Moreover, leaving out in this chapter makes it broader. It shows that Congress was attempting to be all-encompassing of statutes that have to do with fraud. Your Honors, I again just respectfully remind the Court that even if the ALJ could have reached different conclusions as to some of the factual questions raised in this case, and even if this Court would have made different findings if presented with the same evidence, the applicable standard of review here is deferential, and the Board's affirmance of the ALJ's decision should stand. Your Honors, I have no further questions. Thank you. Thank you, Ms. Marcus. Mr. Ogden. Thank you, Your Honors. There are a host of errors here. Your Honors have touched on many of them. There are errors of law. There are clear errors of fact. What we would really urge you to do, Your Honors, as you look at the case, is to focus on the errors that are foundational and then make clear that this case should never have gotten to first base. You can get way around the bases, but it should never have gotten to first base. We should never have had all this litigation. It should never have gone on all this time. Judgment should have been directed at the very outset for Northrop Grumman for a host of reasons. And really, the heart of this and what's real important is to get right what protected activity is under this statute because if protected activity is so broadly defined as the ARB and the ALJ were prepared to do today, and if objective reasonableness is as capacious as they say, then there's no dispute that couldn't be made into a SOX case if it arises in the employment context, if somebody wrongly says SOX. And you really have to put a stop to that. And I think the first place to put a stop to it is one you focused on, which is 1514AE is simply not within the six buckets of 1514AA1 for the reasons that you discussed. It is a very important point, this last one we were talking about, that other whistleblower provisions passed by Congress recite that any complaint about a violation of this chapter is protected. That is not what SOX says. It focuses on the six things. And the catch-all provision, as you put it, is not an unlimited catch-all provision. It's a catch-all position, a provision that focuses as you have rightly opposed. Counsel says there's a similar provision, error 21. What's your response to that? I believe that that's one of the statutes in which there's a specific reference to violations of this chapter, which is a different kind of provision than the one we have here. If Congress had wanted to do what DOL says, it could have put such a provision in, any violation of this chapter. And then somebody could argue. I mean, Judge Ishii has asked a good question as to whether this is such a statute. Is it even a violation of anything? Wouldn't it just be something that a judge would say, well, this isn't arbitrable under the law? But let's say, you know, as a violation, it's not within the zone. More fundamentally, as I think Judge Keenan pointed to, this isn't a violation of 1514AE for the reasons we talked about. It's not in the ethics documents, and the arbitration policy isn't in the ethics documents, and the arbitration policy does not prohibit, does not require arbitration of SOX claims. One sentence tells you that, and it's the sentence you have to read if you're trying to contend that this does violate it. So, Your Honors, we would urge you to focus on those grounds. They require entry of judgment for Northrop Grumman. We shouldn't continue to litigate this case. It should be ended here. Thank you so much. All right. Thank you, Mr. Ogden. We will come down and brief counsel and then move on to our next case.
judges: G. Steven Agee, Barbara Milano Keenan, A. Marvin Quattlebaum Jr.